454      NEW JERSEY SUPREME COURT.

Cooke v. Independent Tel. Const. Co.      77 *N. J. L.*

COOKE, DEFENDANT IN ERROR, v. INDEPENDENT TELE-
PHONE AND TELEGRAPH CONSTRUCTION COMPANY,
PLAINTIFF IN ERROR.

Argued November Term, 1905—Decided January 20, 1908.

1. In an action by a servant for damages for wrongful discharge,
   evidence *held* sufficient to warrant a finding that he had been
   employed by defendant for a certain term.
2. In an action for plaintiff's services in preparing certain engineer-
   ing plans for defendant's use, evidence *held* sufficient to warrant
   a finding that the defendant had engaged plaintiff to prepare such
   plans.

On error to Monmouth County Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices HENDRICK-
SON and PITNEY.

For the plaintiff in error, *Collins & Corbin* and *George S.
Hobart.*

For the defendant in error, *Aaron E. Johnston.*

The opinion of the court was delivered by

PITNEY, J.    Plaintiff, a civil engineer, recovered a verdict
and judgment against the defendant company in an action
upon contract, founded upon two separate claims, viz.—*first,*
damages for defendant's act in dismissing him without cause
from its employment, after he had been engaged for a term
not yet expired; and *second,* compensation for his services in
preparing certain engineering plans for defendant's use.    The
present writ of error brings that judgment under review.

The circumstances, as disclosed by the evidence returned
with the bills of exceptions, were as follows: The construction
company was building water works in Monmouth county for
the Tintern Manor Water Company.    A part of the works
was a large dam, to be built across the valley of the Swimming
river.    The actual construction of this dam had been let to a

firm of subcontractors, Messrs. Flood & Sherrill, and the work
was in progress under the supervision of a Mr. Jermyn, presi-
dent of the construction company, Dr. Wentz, its secretary,
and a Mr. Pratt, who was its superintendent and chief engi-
neer. The proposed dam was a large affair, being eight hun-
dred or one thousand feet long, about forty feet in height at
the lowest part of the valley, and with a width of two hundred
feet at the bottom where the height of the dam was the
greatest. It was to be an earthen embankment, stiffened by a
central wall of concrete masonry known as a "core wall," some
eight or ten feet in thickness, running through the middle of
the embankment. By the original plan it was intended that
the bottom of this core wall should rest upon hardpan; but
in making the necessary excavation great difficulty was found
in reaching hardpan, a substratum of soft mud being encoun-
tered that would have necessitated excavation to an additional
depth of some forty feet. Up to this point the plaintiff had
no connection with the work. His evidence tended to show
that he was approached by Flood, one of the subcontractors,
who asked plaintiff's advice with regard to making a founda-
tion for the core wall. Plaintiff suggested a foundation of
piling, and at Flood's request made a free-hand sketch to illus-
trate the manner of constructing it. Later in the same day
Flood returned to the plaintiff and told him that Wentz had
asked him to request the plaintiff to make a scale drawing.
Plaintiff made such a drawing, showing more in detail and
with greater accuracy his plan, which included round piles to
be driven into the mud, sheet piling to be placed between them,
and concrete to be run in around the heads of the piles to make
a foundation for the core wall. This scale drawing was sub-
mitted by Flood to Mr. Pratt and Dr. Wentz, and the latter
two agreed between themselves that Cooke, the plaintiff, should
be employed at $150 a month to superintend the setting of the
foundation of piles substantially in accordance with his plan.
The substance of this conclusion was communicated to the
plaintiff by Flood, who, according to plaintiff's testimony, said
to him that "Dr. Wentz wanted him to ascertain if I couldn't
be retained to build that foundation, and that he had author-

ized him to offer me at the rate of $150 a month to put in that dam until its completion." What was said between Flood and the plaintiff might have been hearsay, except for the fact that the other evidence tended to show that Wentz and Pratt, as agents of the company, had authorized Flood to communicate with the plaintiff, and that they, after being apprised of the details of the conversations between Flood and the plaintiff, ratified what Flood said and did. The conversations referred to were admitted without objection, and it appeared in evidence that on the strength of what Flood said to the plaintiff the latter went to the scene of the work, saw Pratt, and told him what had been said between Flood and himself. Pratt confirmed what Flood had said, with the result that plaintiff was employed for the defendant company by Pratt and entered at once upon the work. He commenced work on October 10th, 1900, and continued until January 1st following, at which time there was a general stoppage of work, due to the fact that the construction company was short of funds, and the plaintiff was dismissed from the job.

The principal controversies at the trial were—*first,* whether the plaintiff was employed under a term contract, or was employed generally and under such circumstances that he might be dismissed at will; and *secondly,* whether defendant company was liable to pay him for making the plan, or whether, on the other hand, this was furnished by him voluntarily, without understanding or agreement that he should be compensated for it.

For convenience we may deal first with an exception to the judge's charge that is relied upon for reversal. In undertaking to recite the respective claims of the parties the judge used this language: "The plaintiff says that he was employed to superintend the building of this dam until the completion of the work. That is my recollection of it; whereas the defendant says that his employment was simply to continue until the foundation of the core wall was completed. At least the dispute is this: That while the plaintiff claims that his employment was to continue until the entire work of the building of the dam was completed, the defendant says that it was only to

continue until a certain portion of that work was completed, of which he was to have the supervision." The exception as sealed is as follows: "The defendant excepts to that part of the charge in which the court said that the plaintiff claims that he was employed until the dam was completed, the defendant claiming that he was employed until a certain part of the dam was completed." The only point made in the argument is that "it was error for the trial judge to state that the plaintiff said he was employed to superintend the building of the dam until the completion of the dam;" and this on the ground that on plaintiff's own story he was only hired until the completion of the specific work that he was employed to do, to wit, the putting in of the foundation for the core wall. But what the trial judge said concerning the plaintiff's claim was literally justified by what the plaintiff himself had testified, for in one place he says: "Flood came to me and told me that Dr. Wentz had authorized him to offer me at the rate of $150 a month to put in that dam until its completion"—and that it was this authorization which he afterwards detailed to Pratt, and to which Pratt responded, "That is correct." In another place he says (referring to the same conversation): "Mr. Pratt asked me if Mr. Flood had a conversation with me in reference to the dam. I told him that Mr. Flood had told me that Dr. Wentz had asked him if he would see if I could be retained to put in that foundation, and had authorized him to employ me at the rate of $150 a month until the completion of that work. Pratt says, 'That is correct.'" At another time he testified that the contract between him and the company was to continue until completion of the specific work he was employed to do, viz., putting in the foundation, and that this could have been done in about eight months. From this and other portions of the testimony not necessary to be quoted, it is apparent that the plaintiff used somewhat loose expressions, employing the term "dam" when he intended to refer, and was understood to refer, to the foundation of the dam, or of the core wall. But we cannot see that it was erroneous for the trial judge to use an expression quoted from

the plaintiff's evidence in an effort to set before the jury plaintiff's claim in the action.

No stress is made in argument with respect to that portion of the excerpt above quoted from the charge, which is to the effect that defendant's insistment was that plaintiff's employment was to continue only until a certain portion of the work was completed. We observe, however, that there was evidence clearly justifying this statement of defendant's claim. Dr. Wentz himself testified as follows:

"Q. Did you personally employ Mr. Cooke?

"A. No, sir.

"Q. Did you give instructions to Mr. Pratt to employ him?

"A. I approved of his employing him.

"Q. On what terms?

"A. $150 a month.

"Q. For how long a time?

"A. While the piles were being driven for the foundation of the core wall.

"Q. Did you authorize Mr. Pratt or anybody else to hire Mr. Cooke to do work on the dam until the foundation was fully finished?

"A. No, sir."

Moreover, it is, we think, impossible that the trial judge's misquotation of the evidence, if such it was, can have wrought any prejudice to the defendant; for the judge afterwards expressly charged, in response to defendant's request, that, if plaintiff was entitled to recover at all for breach of contract or employment, he could recover only the salary for the period of eight months (when in the ordinary course his part of the work would have been finished), less the amount of salary earned by and paid to him up to June 1st, 1901, and less such further sum as he might with reasonable diligence have earned in similar employment during the remainder of said period of eight months. This excluded any idea that plaintiff's compensation was to continue until the completion of the entire dam.

We come now to the principal controversies—whether plaintiff was employed under a term contract, or only at will, and

whether the plans were furnished by him gratuitously, or under circumstances that warranted the inference that defendant had expressly or impliedly undertaken to pay for their preparation. It was abundantly evident, and, indeed, undisputed, that Pratt had general authority to employ engineers and other men in behalf of defendant for the construction of the dam; but it was insisted by the defendant that his authority was limited. Jermyn, the president of the company, testified: "I gave him instructions to hire what men he needed and keep them as long as he needed them, and then let them go, if he didn't need them, and pay them off." This was in answer to a question as to the authority he had given Pratt with respect to the hiring of engineers or other men. Under this evidence (and there was other to the same effect) we think it was permissible for the jury to construe the instructions as intended to give Pratt the discretion to decide, at the hiring of a man, how long he would need him, and to employ him for that term. This, we think, was an entirely rational, and perhaps the only rational, construction. That being so, it would be within the scope of Pratt's authority, upon employing an engineer to superintend the construction of a special piece of work according to designs that such engineer had prepared, to make a bargain with him that he should remain until that work was completed. Such is the contract as testified by the plaintiff, and we, therefore, think the jury was justified in deciding against the defendant upon this branch of the controversy.

With respect to the plans, it was proven, and not disputed, that the rough sketch, and also the scale plan, were prepared by the plaintiff and delivered by him to Flood; that through Flood they came into the possession of Pratt, who was in general charge of the work for the defendant company; that they were approved by Pratt; and that plaintiff was employed by the company to see that the foundation was constructed by the subcontractors in accordance with his plan. It also appeared that after the dismissal of the plaintiff the work of constructing the foundation was continued in accordance with the same plan. Flood was examined as a witness, and testified that

Cooke made the scale drawing at his request, that he (Flood) showed it to Pratt and Wentz, that the plans were adopted with slight alterations, and that the work progressed in accordance with the plan.  He says, however, that no person in behalf of the defendant company asked him to get the drawing or plan from Cooke.  Wentz, being called as a witness by the defendant, denied that he had asked Cooke, or instructed anyone else to ask him to prepare such a plan.  Pratt, however, testified that Cooke himself showed to him a plan or sketch that he had made respecting the core wall; that he did not know how Cooke came to make the sketch; that he (Pratt) never asked him to do so; that Cooke happened to be present in the office of the company on other business, and engaged in conversation with him (Pratt) and his engineer, a man named Monroe, concerning the plans; and Pratt's impression is that the plaintiff did make a sketch of the piling and showed it to him.  This was before the plaintiff was employed to supervise the construction of the dam.  Plaintiff himself testifies that his meeting with Pratt, at which he was employed, occurred after he had made the plan and given it to Flood, and had had an interview with Flood, at which the latter reported to him the view of Dr. Wentz about the plan, and, as the plaintiff puts it, "Mr. Flood came to me and told me that he had shown that plan to Dr. Wentz, and he was very much pleased with it, and Dr. Wentz wanted him to ascertain if I couldn't be retained to build that foundation, and that he had authorized him to offer me at the rate of $150 a month to put in that dam until its completion, but they couldn't offer any more." Plaintiff testified that he detailed this conversation to Pratt afterwards, and that, in response to the plaintiff's statement of the offer as received from Flood, Pratt said, "That is correct," and, being asked by the plaintiff, "When shall I commence operations?" he answered, "Immediately," and the plaintiff immediately took charge of the construction work, supervising the placing and driving of piles.

At the trial the defendant questioned its liability to pay for the plan, first by motion for nonsuit.  At this juncture the trial judge was of the impression that there was no evidence

to sustain the plaintiff's action in this regard; but he properly held that a nonsuit was not justifiable, because there was evidence requiring submission to the jury of the claim for damages for wrongful discharge. Defendant again raised the point at the conclusion of the whole case by requesting the judge to instruct the jury that plaintiff was not entitled to receive allowance for the value of the sketch or plan. But meanwhile the plaintiff's case had been strengthened by the testimony of Pratt himself concerning plaintiff's instrumentality in preparing the plan. The judge charged the jury that, as he recalled the evidence, there was none showing that the defendant ever requested the plan; that, although a plan or sketch was made by the plaintiff and shown to Mr. Pratt, yet such a plan, submitted voluntarily by the plaintiff and adopted by the defendant, would not impose a legal liability upon the defendant to pay for it in the absence of some agreement or promise; but that, on the other hand, if there was evidence indicating a request upon the part of the defendant to have the plaintiff make this plan, the jury might allow as damages the reasonable value of plaintiff's services in making it. Defendant excepted to this part of the charge. Upon the argument here it is freely admitted that plaintiff in error has no fault to find with the statement of law by the trial judge. It is asserted, however, that there was no evidence to justify the jury in finding that the defendant, or any of its agents, requested the plaintiff to make the plan, or showing any agreement or promise on the part of the defendant to pay for it. If there was any evidence justifying the submission of the question to the jury, the mode in which it was submitted may have been unduly favorable to the defendant. With this we have no present concern. In our view, however, there was no error in leaving the question to the jury, and they were reasonably justified in finding that the plaintiff, when he prepared and submitted the plan, did not intend it as a gratuity. The jury was, we think, justified in finding, in view of the evidence respecting the plan, its preparation, submission and adoption, that the agents of the defendant company, authorized to bind it in the premises, knew when the plan was sub-

mitted to them that it had been procured from the plaintiff by Flood, acting perhaps as a volunteer agent of the company, and that their acts in accepting the plan and employing plaintiff to see that it was carried into execution was a ratification in behalf of the company of what Flood had done about procuring the plan from the plaintiff. This, if believed by the jury (and the verdict shows that they did believe it), rendered Flood's request the defendant's request, and justified a finding that the defendant was liable to the plaintiff for the reasonable value of his services in preparing the plan.

It is next insisted by the plaintiff in error that the evidence conclusively showed that the work of constructing the foundation for the core wall was finished on or about January 15th, 1901, that is, about two weeks after plaintiff was dismissed, and that therefore, upon plaintiff's own theory as to the term of his employment, his damages ought to have been limited by the trial judge to such as accrued during the first two weeks of January, 1901. A request for instructions to this effect was referred and overruled. There was, no doubt, testimony distinctly to the effect that the piling work was finished about two weeks after January 1st, 1901. But there was other evidence tending to show that it was unfinished on January 1st, and that no kind of work was done upon the dam between that date and the spring of the year 1902. The trial judge was therefore justified in refusing to limit the recovery to January 15th, 1901.

Certain assignments of error, and the exceptions to which they refer, are based upon the theory that, although plaintiff was employed by Pratt for a term to end only with the completion of the work, yet this did not import that the employment should be continuous; and it is insisted that, because plaintiff's dismissal on January 1st, 1901, was due to a stoppage consequent upon lack of funds on the part of the employer, he was entitled to no salary or other compensation until the employer was ready to resume work, and must meanwhile hold himself in readiness to resume when the employer got ready, which in this case was on May 1st, 1902. Plaintiff's evidence was to the effect that a reasonable time that should

have been required for completing his work, if it had been continuously prosecuted, was eight months from the time it was commenced. This would have brought his employment to a termination in June, 1901, and the trial judge limited his recovery of damages for the discharge to so much money as he would have earned during the eight months, if permitted to serve the defendant pursuant to the contract, less so much as he did earn or might with reasonable effort have earned within the same period. We agree with the view of the trial judge upon this point.

The remaining exceptions that have been discussed in argument relate to rulings of the trial judge upon the admission or exclusion of evidence. These have been examined without finding error, and they require no further comment.

The judgment under review should be affirmed.